IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAKEEM ABAYOMI, <br><br> Plaintiff, <br><br> v. <br><br> DENIS McDONOUGH, Secretary, United States Department of Veterans Affairs, <br><br> Defendant.[1] | No. 17-cv-05661 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hakeem Abayomi (Plaintiff) is a disabled African American veteran who worked as a clinical pharmacist in the inpatient pharmacy unit of the Department of Veterans' Affairs Edward Hines, Jr. VA Hospital in Hines, Illinois from May 2015 until April 2016. (Dkt. 1 ¶¶ 6, 8, 16.) Plaintiff claims that Defendant wrongfully terminated his employment due to illegal racial discrimination and in retaliation for complaining about illegal racial discrimination. (*Id.* ¶¶ 18–38.) Plaintiff further claims that his termination was inappropriate due to his status as a non-probationary employee. (Dkt. 53 at 7–8.)[2]

---

[1] Secretary McDonough is substituted as Defendant by operation of Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Plaintiff objects to his characterization as a probationary employee. Indeed, he believes that some of the VA's misfeasance involved attempting to alter documents so as to misconstrue his tenure as an excuse to fire him. (*See*, *e.g.*, Dkt. 54 at 25, ¶¶ 6–7.) Ultimately, the argument boils down to the contention that Plaintiff's tenure status was reflected in the "Tenure" box on the SF 50 form and that the number in that box determined Plaintiff's probationary status. (*Id.* at 6.) Yet that misunderstands the box and the form. As Sandra Majors made clear in her deposition—a deposition in which both Plaintiff and Defendant heavily rely—the probationary status of a VA employee is independent of the tenure box.

Defendant Denis McDonough, Secretary of the United States Department of Veterans Affairs, seeks summary judgment and contends that Plaintiff failed to create material issues of genuine fact concerning either the racial discrimination or the retaliation claim. (Dkt. 47-1 at 1.) Defendant contends Plaintiff was fired due to the four separate alleged instances of Plaintiff having incorrectly verified or prescribed drugs. (*Id.* at 4–7.) Defendant further contends that Plaintiff misunderstands the nature of probation, and that Plaintiff was still serving in his probationary period at the time of termination. (*Id.* at 2–3.) For the reasons that follow, Defendant is entitled to summary judgment on both counts.

I.  BACKGROUND

Plaintiff began his employment as a clinical pharmacist for Defendant on May 3, 2015. (Dkt. 48 ¶ 1.) All VA employees are hired as one of three categories of employee: (1) "competitive" non-medical administrative staff governed by Title 5 of the U.S. Code, (2) "exempt" medical staff including doctors and nurses, or (3) "hybrid" employees including clinical pharmacists with hiring governed by Title 38 and evaluation and pay settings governed by Title 5. (*Id.* ¶ 2.) Congress has exempted "exempt" and "hybrid" employees from the competitive hiring process required under Title 5 because of the need to fill those roles quickly to ensure patients receive appropriate care from qualified individuals. (*Id.* ¶¶ 2, 5.)

As a clinical pharmacist, Defendant's hiring practices required Plaintiff to serve a one-year probationary period. (*Id.* ¶ 3.) Defendant uses the probationary

---

(Dkt. 48-1 at Exhibit 5, Dep. of Sandra Majors, at 55:24–57:5; *id.* at 79:6–80:21; *id.* at 91:9–92:1; *id.* at 98:4–102:2.)

period to evaluate the fitness of a new employee for federal service. (*Id.* ¶ 4.) Defendant pharmacists hired for permanent positions are not subject to the Title 5 competitive hiring process, so the probationary period facilitates the Agency's ability to consider a pharmacist's ability to perform in the position to which he was hired and whether he should continue in that role. (*Id.* ¶ 5.) Failure to demonstrate fitness for the position requires an action to terminate the employee. (*Id.* ¶ 7.) A single mistake or instance of misconduct is sufficient to terminate a probationary employee. (*Id.* ¶ 11.)

Plaintiff's benefits and employment status are reflected on his SF-50 form. (*Id.* ¶ 13.) That includes a box labeled "Tenure" which relates to certain employees' reinstatement rights and their grouping for reduction-in-force purposes but does not reflect an employee's probationary status. (*Id.* ¶ 15.) Plaintiff's duties included "daily operation of the pharmacy medication management systems" and providing "clinical, educational, administrative, and distributive functions to ensure the safe, cost-effective, and appropriate drug use within the hospital complex." (*Id.* ¶ 16.) Plaintiff was responsible for verifying prescriptions ordered by treating health-care professionals for veterans receiving care at the Hines facility. (*Id.*) Verifying a prescription requires a pharmacist to consider various factors, including the medication's dose, strength, concentration, and quality, as well as patient-specific factors. (*Id.* ¶ 17.)

Plaintiff initially reported to Melissa Edwards, and then to Grant Elliot, supervisor of the Inpatient Pharmacy unit. (*Id.* ¶ 18.) Plaintiff also reported to Elizabeth Stone, the Associate Chief of Pharmacy, who in turn reported to Don Lynx,

3

Chief of Pharmacy. (*Id.* ¶ 21.) Elliott told Lynx that he intended to step down shortly before Plaintiff's termination in March 2016 and then stepped down from his supervisory role shortly after Plaintiff's termination. (*Id.* ¶ 20.)

Plaintiff's sole performance review, which assessed his first five months of employment, gave him middle-marks in each of the five measurement categories. (*Id.* ¶ 23.) Plaintiff also submitted to a peer review addressing a medication error in early 2016. (*Id.* ¶ 24.) Elliott identified issues with Plaintiff's order processing and productivity, and several VA employees submitted anonymous electronic patient event reports concerning other medication and prescription errors. (*Id.* ¶¶ 25–27.)

On March 7, 2016, Plaintiff filed a complaint with the VA's Office of Resolution Management alleging that Elliott was improperly declining Plaintiff's scheduling requests and otherwise unfairly focusing on Plaintiff's performance problems. (*Id.* ¶ 53.) Plaintiff alleged that he was being retaliated against because of his race, veteran status, and for confronting Elliott about having said "What's up, boy?" to him before Elliott became Plaintiff's supervisor. (*Id.* ¶¶ 55–57.) Following mediation on April 20, 2016, Elliott agreed to explore ways to improve Plaintiff's schedule, and asked human resources to remove himself from making any personnel actions involving Plaintiff. (*Id.* ¶ 59.) Plaintiff also voluntarily withdrew his complaint in full on April 20. (*Id.* ¶ 60.) Plaintiff had no pending complaint of any kind against Defendant at the date of his termination. (*Id.* ¶ 75.)

Attempting to address the performance issues, Stone met with Plaintiff to conduct a "Weingarten investigation", at which an employee is entitled to have union representation present because it may result in discipline or termination. (*Id.* ¶¶ 29–

4

32 (citing *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975)).) The April 2016 investigation related to four reports of potentially improper medical verification. (*Id.* ¶¶ 33–46.) In consultation with human resources, Plaintiff's supervisors determined that termination before the end of Plaintiff's probationary period was appropriate. (*Id.* ¶ 50.) The termination letter referred to two of the incidents raised at the *Weingarten* investigation—both involved the powerful anticoagulant heparin—that justified termination. (*Id.* ¶ 51.) On April 29, 2016, Defendant terminated Plaintiff's employment. (*Id.* ¶ 52.)

Following Plaintiff's termination, he filed complaints with the Merit Systems Protection Board, Department of Labor, and the VA's Office of Resolution Management. (*Id.* ¶¶ 76–79.) Each adjudicating body either dismissed the claim on jurisdictional grounds or found no violation. (*Id.* ¶¶ 76–79.) Plaintiff then filed this suit alleging wrongful termination on the basis of racial discrimination and retaliation. (*Id.* ¶ 80.)

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the "put up or shut up moment in a lawsuit, summary judgment requires a non-

moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

### A. Race Discrimination Claim

Plaintiff claims that Defendant illegally discriminated against him on the basis of his race in violation of Title VII when it terminated his employment. (Dkt. 53 at 5–20.) Contesting that allegation, Defendant contends that it fired Plaintiff because of his deficient performance during his probationary period. (Dkt. 47 at 10.) Defendant asserts that Plaintiff cannot show a prima facie case of race discrimination, and even if he could, Plaintiff cannot prove Defendant's case for termination was pretextual. (*Id.* at 10–11.)

To assess a Title VII claim, the Court asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Although not required, one method a plaintiff may choose to pursue her claim is the "*McDonnell Douglas* 'burden-shifting framework.'" *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)); *see also generally McDonnell Douglas Corp. v. Green*,

6

411 U.S. 792 (1973). The *McDonnell Douglas* framework asks a plaintiff to show a prima facie case by demonstrating that they: (1) are a member of a protected class; (2) met the defendant's legitimate expectations; (3) suffered an adverse employment action; and (4) were treated less favorably than similarly situated employees not members of the protected class. *McDaniel*, 940 F.3d at 368. If a plaintiff satisfies each element of their prima facie case, the burden shifts to the defendant " 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.' " *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719–20 (7th Cir. 2018)).

Similarly situated employees must be " 'directly comparable' in all material respects." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F3d 887, 895 (7th Cir. 2018) (quoting *Reed v. Freedom Mortg.*, 869 F.3d 543, 549 (7th Cir. 2017)). This inquiry is "flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?' " *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). The similarly situated requirement was intended to "eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable," namely, discriminatory or retaliatory animus. *Id.* at 846 (quotation omitted).

Even if a plaintiff fails to succeed under *McDonnell Douglas*, the Court must assess the evidence "as a whole, rather than asking whether any particular piece of

7

evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765; *see also McDaniel*, 940 F.3d at 368 (same).

Plaintiff alleged facts meeting the first three *McDonnell Douglas* factors, but fails to demonstrate the fourth factor needed to establish a prima facie case. Plaintiff fails to allege that Defendant treated similarly-situated non-Black employees more favorably than him. *See McDaniel*, 940 F.3d at 368–69. Plaintiff must identify a similarly situated employee that is "directly comparable" in "all material respects" to succeed on his claim. *Johnson*, 892 F.3d at 895 (internal quotation omitted). Plaintiff's failure to identify a comparator treated more favorably undermines his discrimination claim.

In his interrogatories and briefing, Plaintiff identified three potential comparators: white pharmacist Patrick Hammond, Asian Pharmacist Kam Li, and white pharmacist Alex Chew. (Dkt. 48 ¶¶ 61–62.) Defendant hired Hammond six months after Plaintiff's termination. (*Id.* ¶ 63.) Hammond then completed his probationary period in October 2017. (*Id.* ¶ 64.) As did Plaintiff, Hammond filed an EEOC complaint alleging a discriminatory and hostile work environment. (*Id.* ¶ 67.) That complaint sprung from a whistleblower complaint Li filed alleging mismanagement and misconduct. (*Id.* ¶ 72.) The resulting investigation failed to substantiate Li's allegations. (*Id.* ¶ 73.) Hammond received better ratings during his probationary period's annual review and he was not supervised by either Elliott or Lynx. (*Id.* ¶¶ 65–66.) Despite both having filed EEOC complaints, the different supervisors, different performance ratings, and different probationary status

8

differentiate the two enough to confound Hammond's use as a comparator. *See Johnson*, 892 F3d at 895.

Only Li engaged in a protected activity, but neither Li nor Chew was serving a probationary period during any time relevant to this lawsuit. (Dkt. 48 ¶¶ 69–70, 74.) Likewise, Plaintiff did not allege facts showing that Li or Chew engaged in "comparable misconduct" while on probationary status. Lack of evidence "on this element is sufficient to end the inquiry under the indirect method, as it is [Plaintiff's] responsibility to identify and present evidence of a comparator at the summary judgment stage." *Hooper v. Proctor Health Care, Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). Like Hammond, neither Li nor Chew are adequate comparators. That is fatal to his attempt to establish a prima facie case of discrimination. *McDaniel*, 940 F.3d at 368.

Even if Plaintiff established a prima facie case under the *McDonnell Douglas* framework, Defendant articulated a legitimate, nondiscriminatory basis for his termination: the errors raised in the *Weinberg* investigation and explained in Plaintiff's termination letter. (Dkt. 48 ¶¶ 23–52.) Plaintiff fails to show that Defendant's explanation for his termination was a pretext to cover up unlawful motivations. *See Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

The "ultimate burden of demonstrating that the defendant intentionally discriminated always remains with the plaintiff." *Id.* In determining whether an employer's stated reason for discharge is pretextual, the question "is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. Eng., Inc.*,

9

687 F.3d 297, 311 (7th Cir. 2012) (internal quotation omitted). Ordinarily, an employer's "lack of knowledge about a protected category rings a death knell for discrimination claims." *Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004). The court does not "second-guess" an employer's "business decisions, even if they are wrong or bad," so long as the "employer acted in good faith and with an honest belief." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999). Stray remarks of non-decisionmakers are typically insufficient to create an inference of discrimination. *See Kirley v. Bd. Of Educ. of Me. Twp. High Sch. Dist. 208*, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013). A plaintiff seeking to prove pretext bears a "heavy burden." *McGraw v. Chicago Hous. Auth.*, 2000 WL 153810, at *5 (N.D. Ill. Feb. 10, 2000).

Plaintiff fails to meet the heavy burden needed to demonstrate that Defendant's "explanation is pretextual." *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). Defendant shows legitimate, non-discriminatory reasons for terminating Plaintiff's employment. (Dkt. 48 ¶¶ 33–43, 51.) It is undisputed that one sustained charge is sufficient to terminate a probationary employee. (Dkt. 54 ¶ 11.) Lynx received authorization from Kucek to terminate Plaintiff due to two sustained charges. (*Id.* ¶ 51.) Those two sustained charges justify Plaintiff's termination.

Defendant identifies seven arguments that Plaintiff raises in support of his discrimination claim: "(1) that Elliott made 'racist comments,' (2) that the VA tampered with a field on his personnel form, (3) that Stone's testimony about double-check procedures was inconsistent with her declaration, (4) that the VA's questioning of Abayomi on an ePERs report about a possible Epoetin error was

10

infected by a wrongfully withheld or fabricated document, (5) that Stone lied about two ePERs reports of medication errors by Abayomi after his Weingarten interview, (6) that his mistake in verifying the insulin pen instead of the vial was 'trivial,' and (7) that the VA 'manufactured' Abayomi's auxiliary label error." (Dkt. 64. at 12.) Those arguments, with the factual support in the record, are insufficient to survive summary judgment. And merely stating that Lynx and Stone treated "similarly situated employees more favorably" (Dkt. 1 ¶ 22), without sufficiently explaining which specific employee comparators were similarly situated or how those employees' treatment was more favorable, is a conclusory statement. *See McDaniel*, 940 F.3d at 368. Plaintiff fails to establish a prima facie case of race discrimination as to Count I, and Defendant is entitled to summary judgment.

### B. Retaliation Claim

To survive summary judgment, a plaintiff's Title VII retaliation claim must present sufficient evidence to create a question of fact as to whether he: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a but-for causal connection between the two. *See Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). A plaintiff's alleged protected activity "must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014).

Plaintiff succeeds in meeting the first and second prongs of a retaliation claim at the summary judgment stage. Plaintiff filed an EEOC claim alleging harassment and a hostile work environment based on race. (Dkt. 53 at 2.) After Plaintiff withdrew the EEOC complaint, Defendant terminated his employment. (*Id.* at 3–4.) Whether

11

there exists a retaliation claim that can survive summary judgment thus turns on whether there is a but-for causal link between the two. *See Kotaska*, 966 F.3d at 632.

Plaintiff has not alleged sufficient facts to show that but-for connection. Plaintiff voluntarily withdrew the EEOC complaint in full shortly after its filing and before his termination. (Dkt. 54 ¶ 60.) Plaintiff admits that, following mediation, Elliott advised human resources that he did not wish to be involved in any personnel actions involving Plaintiff to avoid upsetting the resolution of that mediation (and, to avoid any appearance of retaliation). (*Id.* ¶ 59.) Plaintiff admits that he attended a *Weingarten* meeting to address four separate issues raised by Defendant. (*Id.* ¶ 32.) Plaintiff admits that Defendant found two of the instances raised in the *Weingarten* investigation sufficient to support his discharge. (*Id.* ¶ 51.) Yet Plaintiff contests Defendant fired him due to his errors, and instead suggests that it is pretext for retaliation. (*Id.* ¶ 52.)

Plaintiff fails to meet the heavy burden needed to demonstrate that Defendant's "explanation is pretextual" regarding his retaliation claim. *See Simpson*, 827 F.3d at 661. Defendant demonstrated legitimate, non-retaliatory reasons for terminating Plaintiff's employment. (Dkt. 48 ¶¶ 33–43, 51.) For his retaliation claim, Plaintiff refers to the since-withdrawn EEOC complaint filed against Elliott. (Dkt. 53 at 22–23.) Yet Plaintiff acknowledges that Elliott officially removed himself from personnel decisions regarding Plaintiff. (*Id.* at 23.) That Elliott, as Plaintiff's supervisor, was involved in previous personnel decisions does not taint later decisions for which there is no evidence of Elliott's participation. (*Id.*); *see also Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) ("But merely checking the "Race" and

"Sex" discrimination boxes in the EEOC charge is not enough to make the EEOC charge like or reasonably related to [plaintiff's] discriminatory discharge claims."). Alleging an EEOC complaint and then an adverse employment action is not sufficient to meet the but-for test required to show that the employment termination resulted from the same conduct. *Id.* Plaintiff fails to establish a prima facie case of retaliation as to Count II, and Defendant is entitled to summary judgment.

## IV.   CONCLUSION

Defendant's motion for summary judgment is granted.

SO ORDERED in No. 17-cv-05661.

Date: September 30, 2024

JOHN F. KNESS
United States District Judge